Bruce Steve BAKER,
Plaintiff-Appellant,

v.

FIRESTONE TIRE & RUBBER CO., a
foreign corporation,
Defendant-Appellee.

No. 84–5956.

United States Court of Appeals,
Eleventh Circuit.

July 18, 1986.

See also, D.C., 537 F.Supp. 244.

Dwight Sullivan, Miami, Fla., for plaintiff-appellant.

Berryhill, Avery, Williams & Sasadu, P.A., O. Edgar Williams, Jr., Ft. Lauderdale, Fla., David H. Worrell, Jr., Kenneth J. Moran, McGuire, Woods & Battle, Richmond, Va., for defendant-appellee.

Before FAY, Circuit Judge, HENDERSON * and NICHOLS,** Senior Circuit Judges.

HENDERSON, Senior Circuit Judge:

This appeal results from a diversity action for damages tried in the United States District Court for the Southern District of Florida against the manufacturer of a failed automobile tire. Finding no reversible error, we affirm.

Bruce Steve Baker, the appellant, was injured on August 13, 1978, when he lost control of his 1973 Ford Capri on a street in Dade County, Florida and collided with an oncoming vehicle. Baker suffered extensive facial injuries when his head struck the car's steering wheel. He purchased the car in 1977 in good condition, but had never utilized its seat belt. At the time of the collision, the automobile was equipped with Firestone 500 steel belted radial tires on the rear wheels. A previous owner of the car purchased the tires in 1973.

Baker sued Firestone Tire & Rubber Company in Florida state court for negligence, breach of express and implied warranty and strict liability. He alleged the failure of the left rear tire as the cause of his injuries. Firestone removed the case to federal district court and it was tried before a jury in September, 1984. Shortly before the trial, Firestone moved to amend its answer to assert a seat belt defense that had been adopted by the Supreme Court of Florida after this suit had been filed. The district court granted the motion.

During the trial, Baker produced expert testimony that the left rear tire was defective and that the collision resulted from the failure of this tire. Firestone countered with its own expert testimony. Firestone's expert attributed the tire failure not to manufacturing defects, but to the fact that it was weakened by under-inflated operation and road wear. Firestone also presented evidence that the car was equipped with a seat belt and that Baker would have suffered far fewer injuries had he been wearing the seat belt.

The district court granted a directed verdict to Firestone on Baker's cause of action for express warranty and submitted the remaining claims for the jury's determination of liability and actual damages. The court refused to submit the issue of punitive damages to the jury because of a lack of factual support. In answer to special interrogatories, the jury rejected the strict liability theory, but found in favor of Baker on his negligence and implied warranty claims. The jury then determined that Baker was sixty percent negligent and that Firestone was forty percent negligent. It

---

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

assessed Baker's total damages as $300,-000.00. The jury also found that Baker's failure to wear a seat belt was unreasonable and that he would have sustained ninety percent fewer injuries had he worn a seat belt. The district court reduced the $300,000.00 total damages by sixty percent and then by ninety percent and entered a final judgment for Baker of $12,000.00. On appeal, Baker urges that the district court erred in submitting to the jury Firestone's affirmative defense that he failed to wear his seat belt and in rejecting his claim for punitive damages.

In 1984 the Florida Supreme Court recognized a seat belt defense in automobile accident cases. *See Insurance Company of North America v. Pasakarnis*, 451 So.2d 447 (Fla.1984). *See also Volkswagen of America, Inc. v. Long*, 476 So.2d 1267 (Fla.1985); *Protective Casualty Insurance Co. v. Killane*, 459 So.2d 1037 (Fla.1984); *Allstate Insurance Co. v. Lafferty*, 451 So.2d 446 (Fla.1984). The court authorized a reduction of damages where the plaintiff's injuries resulted from his failure to use a seat belt. As an affirmative defense, the defendant bears the burden of proving the truth of the allegations and must establish two elements. First, there must be proof that the plaintiff's failure to wear an available and functional seat belt was unreasonable. Second, it must be shown what injuries, as a percentage of total injuries, could have been prevented by wearing a seat belt. *Pasakarnis*, 451 So.2d at 454. In reality, the defense perceives the failure to wear a seat belt as a failure to mitigate damages rather than a form of contributory negligence. *Id.*

Baker first contends that there was no factual basis for the defense because Firestone failed to prove that his car contained a functional seat belt. As such, he claims he was entitled to a directed verdict on this defense. A district court may grant a directed verdict if, after viewing all the evidence in the light most favorable to the nonmoving party, it determines that rea-

sonable men could not arrive at a contrary determination. *See Lane Crane Service, Inc. v. I.B.E.W., Local Union 177*, 704 F.2d 550, 553 (11th Cir.1983); *Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1374–75 (11th Cir.1982).

■ After reviewing the record, we find there was sufficient evidence to submit the defense to the jury. The evidence discloses that the car was equipped with a seat belt, but that Baker had never used it. The seat belt is visible in a photograph of the car taken after the collision and the police officer who responded to the accident testified that the seat belt was visible when he arrived at the scene. Moreover, an expert witness testified that he had never known of a seat belt wearing out or of one malfunctioning in normal use. There was no evidence that anyone had ever tested the seat belt to determine if it functioned properly. Although this evidence does not establish beyond all doubt that Baker's car was equipped with a functional seat belt, it certainly raises a jury issue as to its operative condition.

■ Baker next argues that the seat belt defense should not affect conduct that occurred before the Florida Supreme Court decision in *Pasakarnis*. We need not address this retroactivity question because Baker failed to raise this issue before the district court. As a general rule, this court will consider only issues first presented to the district court. *See Allen v. Alabama*, 728 F.2d 1384, 1387 (11th Cir.1984); *Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir.1982).

■ Finally, Baker challenges the district court's instructions to the jury on the seat belt defense. As observed earlier, the Florida Supreme Court placed the burden of proof of this defense on the defendant. *Pasakarnis*, 451 So.2d at 454. The district court's jury instructions noted the substantive elements of the defense, but made no reference to the burden of proof.[1] Since

---

**1.** The district court instructed the jury:

> If you find that there was an available and fully operational seat belt in the plaintiff's car

the district court gave extensive instructions on the plaintiff's burden of proof, Baker reasons that the jury may have imposed this burden on him.[2]

Before addressing the merits of this assignment of error, we emphasize the nature of our review. "The proper standard of review on jury instructions is to view the challenged instructions 'as part of the entire charge, in view of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues.'" *National Distillers & Chemical Corp. v. Brad's Machine Products, Inc.*, 666 F.2d 492, 497 (11th Cir.1982). *See also Somer v. Johnson*, 704 F.2d 1473, 1477–78 (11th Cir.1983).

After a review of the jury instructions as a whole, it is obvious that the jury had sufficient instruction on the burden of proof. In a general discussion of burden of proof, the court stated that "should you find that the preponderance of evidence does support each essential element of the plaintiff's claim *or the defendant's claim,* then you should find for that party having the burden of proof as to that claim." Record on Appeal, Vol. 8, p. 387 (emphasis added). Moreover, in a discussion of Firestone's affirmative defenses, the district court charged that "[t]he burden is on Firestone of proving these claims by a preponderance of the evidence." Record on Appeal, Vol. 8, p. 390.

None of these instructions expressly mentioned Firestone's seat belt defense. However, this defense was clearly before the jury as one of Firestone's affirmative defenses and, as such, was adequately addressed in the district court's general instructions on Firestone's burden of proof. Taken as a whole, the instructions did not mislead the jury.

Baker also complains of the district court's refusal to submit his claim for punitive damages to the jury. As a threshold matter, Baker assigns error to the exclusion from evidence of two documents, which allegedly establish factual support for punitive damages. The first was the report of a 1978 congressional investigation into Firestone tires, Subcomm. on Oversight and Investigations of the House Comm. on Interstate and Foreign Commerce, 95th Cong., 2d. sess., The Safety of Firestone 500 Steel Belted Radial Tires (Comm. Print 1978). This report contains testimony and statements made to the subcommittee as part of its investigation. Baker concedes that the report is hearsay, but argues that it is admissible hearsay permitted by Fed.R.Evid. 803(8)(C), the public reports hearsay exception.

We agree with the district court that this report lacks the trustworthiness necessary to bring Rule 803(8)(C) into play. The rule permits the introduction into evidence of the factual findings of an objective government investigation. The subcommittee report did not contain the factual findings necessary to an objective investigation, but consisted of the rather heated conclusions of a politically motivated hearing. *See Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22–23 (6th Cir.1984) (per curiam); *Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1 (N.D.Miss.1980). As such, the report was properly omitted from evidence.

The exclusion of a July 17, 1973 internal Firestone memorandum is a closer

---

at the time of the accident, and if you find that a reasonably prudent person would have used the seat belt under the circumstances, you should then determine whether plaintiff's failure to use the seat belt produced or contributed substantially to producing at least a portion of his damages and, if so, you should determine what percentage of plaintiff's total damages were caused by his failure to use the seat belt.
Record on Appeal, Vol. 8, pp. 392–93. *Cf. The Florida Bar Standard Jury Instructions, Civil 85–*

*1,* 475 So.2d 682 (Fla.1985) (per curiam) (Florida's standard jury instructions for seat belt defense).

**2.** Firestone contends that Baker failed to preserve this error by timely objection. Although Baker's objection was somewhat imprecise, it was sufficient to notify the district court of the nature of his objection. *See, e.g.,* Record on Appeal, Appendix, pp. 17–18.

question. The memorandum summarized problems in the manufacture of *all* Firestone tires that year. It noted that sixty percent of all tires analyzed contained some form of manufacturing defect, but did not specify the nature of these defects.

The author of this report, Robert W. French, a Firestone quality control engineer, testified at the trial about these manufacturing problems. He admitted this defect rate, but stated that the vast majority of these deficiencies concerned tire appearance rather than safety. *See* Record on Appeal, Vol. 7, pp. 221–35.

Baker maintains that French's memorandum was admissible as an admission by Firestone under Fed.R.Evid. 801(d)(2)(D). The district court refused to admit the report on relevancy grounds because it referred to flaws in all Firestone tires rather than just 500 series radial tires.[3] This relevancy question need not be reached here because the memorandum duplicated French's testimony at trial, and, as such, could be excluded as cumulative evidence. *See* Fed.R.Evid. 403.

Lastly, Baker claims that the district court should have submitted his request for punitive damages to the jury. Baker's original complaint contained a claim for punitive damages in Count V. The district court dismissed this count on July 15, 1982, because it alleged a non-existent "duty to recall." The complaint was not amended at that time. The issue came up again at a pretrial conference held on March 23, 1984 and Baker was instructed by the court to file a motion to amend if he desired to pursue such relief. *See* Record on Appeal, Vol. 2, pp. 12–13. He moved to amend his complaint on August 16, 1984, one month before trial. The district court denied this motion on September 7, 1984, as being untimely. *See* Fed.R.Civ.P. 15(a). At the trial, however, the court suggested that it might grant leave to amend if Baker's evidence established a factual basis for puni-

tive damages. *See* Record on Appeal, Vol. 7, p. 243. The court found no evidentiary support for punitive damages and consequently refused to submit the issue to the jury.

■ Baker's request for punitive damages follows a somewhat confused procedural trail, but in essence was a request to amend the pleadings to conform to the evidence. Fed.R.Civ.P. 15(b) instructs district courts to grant leave for such amendments freely, provided no prejudice to the defendant is shown.[4] *See Cioffe v. Morris,* 676 F.2d 539, 541–42 (11th Cir.1982). However, before leave to amend may be granted, the plaintiff must establish a factual foundation for the amendment. *See Mills v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 305, 308 (8th Cir.1983).

The standard for awarding punitive damages under Florida law in a case such as this is well established.

A legal basis for punitive damages is established in products liability cases where the manufacturer is shown to have knowledge that its product is inherently dangerous to persons or property and that its continued use is likely to cause injury or death, but nevertheless continues to market the product without making feasible modifications to eliminate the danger or making adequate disclosure and warning of such danger.

*Wolmer v. Chrysler Corp.,* 474 So.2d 834, 836 (Fla.Dist.Ct.App.1985).

■ Baker points to the testimony of Robert French as demonstrating sufficient knowledge and subsequent inaction by Firestone to support punitive damages. We disagree. French stated that sixty percent of all tires tested in 1973 showed some form of defect and that most of these deficiencies were cosmetic. There was no evidence from French or any other witness about the number or nature of defects in

---

**3.** In 1973 radial tires constituted fifteen percent of Firestone's total tire production. Record on Appeal, Vol. 7, p. 222.

**4.** Firestone asserts that it would be prejudiced by Baker's requested amendment because the parties already had completed discovery and had exchanged witness lists. We need not address this contention.

500 series radials. More significantly, there was no evidence that any of these defects made Firestone's tires "inherently dangerous" or that their continued use was "likely to cause injury or death." Baker's evidence simply failed to establish a factual basis for punitive damages and, in such circumstances, we cannot say that the district court abused its discretion in refusing to permit Baker's request to amend his complaint.

For the foregoing reasons, the judgment of the district court is AFFIRMED.